

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALVAIR DESOUSA | : | CIVIL ACTION |
| v. | : | No. 11-3237 |
| THE CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                            July 9, 2013

      In this action pursuant to 42 U.S.C. § 1983, pro se Plaintiff Alvair DeSousa brings claims against the City of Philadelphia, the Philadelphia Police Department, the Philadelphia District Attorney's Office, Assistant District Attorney (ADA) Marian Braccia, and "Ex P/O" Sharkey arising out of a March 30, 2008, incident in which Sharkey and other police officers invaded DeSousa's home, struck him in the head with a club, arrested him using excessive force, and arbitrarily incarcerated him. Before the Court are the City's Motion to Dismiss DeSousa's Amended Complaint and DeSousa's Motion to Amend Complaint and Cure Deficiencies. For the reasons set forth below, the City's motion will be granted and DeSousa's motion will be denied.

      In his original Complaint, filed in May 2011, DeSousa challenged the use of excessive force against him by Sharkey and other police officers during his arrest, his arbitrary incarceration following his arrest, the denial of adequate medical treatment during his incarceration, and his malicious prosecution by the Police Department, the District Attorney's Office, ADA Braccia, and Sharkey. On July 9, 2012, this Court dismissed DeSousa's original Complaint against the City without prejudice, finding DeSousa had failed to state a claim against the City pursuant to § 1983 because he had not identified any City policy or custom that caused a

violation of his constitutional rights.[1] *See McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) ("[W]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." (quotation omitted)). Although the Court granted DeSousa 30 days to file an Amended Complaint correcting this deficiency, DeSousa did not amend his Complaint within the time permitted. Rather, on December 22, 2012, apparently in response to this Court's December 3, 2012, Order dismissing his original Complaint against two other Defendants (the District Attorney's Office and ADA Braccia), DeSousa filed an Amended Complaint, which the City thereafter moved to dismiss.

The Amended Complaint lists the City as a Defendant in the caption but does not otherwise mention the City, much less identify a City policy or custom that resulted in a violation of his constitutional rights. As it pertains to the City, the Amended Complaint suffers from the same deficiency as DeSousa's original Complaint. Therefore, the City's motion to dismiss will be granted. *See id.* at 658 (holding to satisfy the pleading standard for a § 1983 municipal liability claim, the plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was").

As noted, DeSousa appears to have filed his Amended Complaint in response to this Court's December 3, 2012, Order granting a motion to dismiss filed by the District Attorney's Office and ADA Braccia. In that Order, the Court dismissed with prejudice DeSousa's claims against the District Attorney's Office and his malicious prosecution claim against ADA Braccia. Because it was not clear whether DeSousa was alleging that Braccia participated in the attack by

---

[1] The Court dismissed the Police Department as a party to the case because it is not a separate legal entity from the City.

2

Sharkey and other police officers (and, if so, how), the Court dismissed DeSousa's remaining claims against Braccia without prejudice. In his Amended Complaint, DeSousa alleges ADA Braccia "took part" in the incident in which Sharkey and other police officers arrested him using excessive force, Am. Compl. 1, but again does not allege what, if anything, Braccia did in connection with the attack. Moreover, the Amended Complaint characterizes the incident as having been perpetrated by "'Ex P/O' one Sharkey and other enactments of the Philadelphia Police Department."[2] Am. Compl. 1. Because DeSousa has again failed to allege ADA Braccia was personally involved in the attack in some way, his claim against Braccia will also be dismissed. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs"); *see also Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007) (affirming sua sponte dismissal of pro se complaint for failure to state a claim where plaintiff had been given a prior opportunity to amend his complaint and where it was clear plaintiff could not prevail).

On February 22, 2013, after the City moved to dismiss his Amended Complaint, DeSousa filed a motion to amend, seeking to further amend his Complaint to include information he learned after allegedly speaking with Sharkey, whom DeSousa has never properly served.[3] In his

---

[2] The Amended Complaint also makes the conclusory allegation that ADA Braccia maliciously prosecuted DeSousa; however, this Court previously dismissed DeSousa's malicious prosecution claim against Braccia with prejudice based on absolute immunity. *See* ECF No. 20.

[3] Although DeSousa initially attempted to serve Sharkey at the "17th District," because Sharkey had been dismissed from employment with the Philadelphia Police Department more than a year before the service attempt, the service was improper. In this Court's July 9, 2012, dismissal Order, the Court granted DeSousa an additional 30 days in which to serve Sharkey and provided him with Sharkey's last known address, according to the City's records. Because DeSousa was arrested shortly thereafter, however, he was unable to complete service, as directed, and instead submitted a notice requesting that his prior service attempt be deemed sufficient. On January 4, 2013, this Court denied DeSousa's request, but granted him an additional 30 days in which to serve Sharkey.

motion to amend, DeSousa represents that after he was released from jail and recovered "open[]ed mail" containing Sharkey's last known address, he drove to the address and spoke with Sharkey, who explained he had been "under the influence of coke, dope and the Pope" at the time of DeSousa's arrest. Pl.'s Mot. to Amend 1-2. According to the motion, Sharkey told DeSousa that after attending a "wild party" at which he ingested cocaine and whiskey, he received a "confidential phone call" directing him to a Catholic church around the corner where "unknown dignitaries" and "Sargent Messi" ordered him to arrest a black man who was later revealed to be DeSousa. *Id.* at 2. After ingesting more drugs with his assigned partner, "P/O Deng," Sharkey made the arrest, using force because "the effect of the dope had him feeling like a 'superman,'" and he "just could not control his power or his strength." *Id.* Sharkey also allegedly told DeSousa "it is a custom in the City of Philadelphia [that] a fel[]ony convicted individual ('specially blacks') must not survive in any community unless he/she has full support of a main religion group and or is political[ly] connected," *id.* at 2, and that it was Sharkey's understanding that DeSousa's arrest was authorized by Captain Washington, who was then the commander of the 17th District, *id.* at 3. Based on his conversation with Sharkey, DeSousa understood Sharkey had acted "in the commission of execution of a loco government custom." *Id.* at 1. At the end of the conversation, DeSousa accepted Sharkey's apology, having been convinced that Sharkey and his partner were both "out of their natu[]ral mind[s]" at the time they arrested DeSousa. *Id.* at 3. DeSousa therefore asks this Court to dismiss all claims against Sharkey and seeks to pursue only his claims against the City for its "unconstitutional execution of the Philadelphia loco (nut) government custom."[4] *Id.*

---

[4] Because DeSousa has advised this Court he no longer wishes to pursue his claims against Sharkey (and because he has never properly served Sharkey), DeSousa's claims against Sharkey will be dismissed with prejudice.

4

Under Federal Rule of Civil Procedure 15(a), a party may amend his pleading with the court's leave, which should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A]bsent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (internal quotation marks, emphasis, and citations omitted). An amendment is futile if the pleading, as amended, "would fail to state a claim upon which relief could be granted" under Federal Rule of Civil Procedure 12(b)(6). *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (internal quotation marks and citation omitted). To satisfy the Rule 12(b)(6) standard, the amended pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although DeSousa's motion to amend attempts to correct the deficiency in his prior complaints against the City—namely, his failure to identify a municipal custom or policy that caused a violation of his constitutional rights—his allegations are still insufficient to state a claim of municipal liability pursuant to § 1983. In his motion, DeSousa alludes to a municipal custom, suggesting Sharkey was acting pursuant to a "loco government custom" in arresting him, but the custom he identifies has nothing to do with either the subject matter of his claims (i.e., arrests, prosecutions, and the use of excessive force) or the types of City actors who are alleged to have violated his constitutional rights. Instead, DeSousa describes only a general custom of not permitting felons to "survive" without the support of a "main religion group" or political connections. Pl.'s Mot. to Amend 2. These allegations are too vague and conclusory to support

5

a plausible claim that DeSousa's arrest and prosecution were undertaken pursuant to a City custom.

DeSousa also has not sufficiently identified any municipal policy that caused the alleged constitutional violations. Although DeSousa asserts it was Sharkey's understanding that his arrest was authorized by Captain Washington, the commander of the 17th District, DeSousa has alleged no facts suggesting Washington possessed final authority to establish municipal policy. *See McTernan*, 564 F.3d at 558 (noting a government policy "is made when a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict" (internal quotation marks and citations omitted)). Indeed, case law suggests the Police Commissioner is the official policymaker for the Philadelphia Police Department and the City may be liable for decisions by other police officials only if the Commissioner acquiesced in such decisions or delegated his policymaking authority to such other officials, neither of which is alleged here. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990) (holding the Philadelphia Police Commissioner is an official policymaker for municipal liability purposes under § 1983 and suggesting the City could be liable for conduct of police Captain and commanding officer only if Commissioner either acquiesced in Captain's decisions or delegated his authority to him); *Grillone v. City of Phila.*, No. 02-6916, 2003 WL 21293801, at *3-4 (E.D. Pa. Mar. 10, 2003).[5]

Because the facts alleged in DeSousa's motion to amend would not support a claim for municipal liability against the City, the motion will be denied as futile, and DeSousa's claims against the City will be dismissed with prejudice.

---

[5] The Court also notes that insofar as DeSousa is asserting a claim for excessive force, the allegations in his motion to amend affirmatively refute the imposition of municipal liability, as DeSousa represents he accepted Sharkey's explanation that Sharkey's use of excessive force was "the effect of the dope." Pl.'s Mot. to Amend 2-3.

6

An appropriate order follows.

BY THE COURT:

*Juan R. Sánchez*

ENTERED
JUL -9 2013
CLERK OF COURT

7/9/13